THE STATE *ex rel.* BROADHEAD v. BERG *et al.*

1. **Mandamus to Compel Board of Canvassers to Count Election Returns.** Where it appeared that a board of canvassers of election returns had completed the canvass and made out an abstract of the votes before the expiration of the time limited by law for the performance of these duties, but the abstract was still in the custody of a member of the board when notice was given them of an alternative writ of mandamus sued out within that time, requiring them to count certain votes which they had illegally rejected: *Held,* that the writ was properly issued and should be made per

emptory, and this though it might have been true that the board had finally adjourned when the notice was served.

2. **Election**: OFFICE: "FOR CONGRESS." Election returns designated the office for which rival candidates received votes thus: "For Congress." Upon objection made that this was not the proper designation of any office; *Held,* that it could by no reasonable intendment have reference to any other office than that of Representative in Congress and should be so construed.

3. **Election Returns** otherwise proper will not be invalidated by reason of the fact that they include something to which the returning officers are not by law required to certify. Hence, where judges of election were not by law required, in certifying the votes received by the several candidates for representative in congress, to designate the congressional district by number, or otherwise. *Held,* that certificates of an election in the Ninth Congressional district which in addition to everything else required by the statute to be certified contained the following "For Congress," were not void, and should be canvassed and counted for the Ninth District.

4. **Congressional Election in St. Louis**: REGISTER'S ABSTRACT OF VOTES. Under the present apportionment act, (Acts 1882, p. 1,) the wards of the city of St. Louis being integral parts of the congressional districts in the city, it is the duty of the city register to make out the abstract of votes for representative in congress in such a manner as to show the number cast in each ward.

5. ——: ——. On the 7th of November, 1882, a general election was held, at which a member of congress was to be elected from the Ninth Congressional District in the city of St. Louis, as the said district is constituted under the apportionment act of 1882. On the same day a special election was held in the Second Congressional District in said city, as said district was constituted under the former apportionment act, (that of 1877,) for the purpose of filling a vacancy. The two districts embraced nearly, though not entirely, the same territory. Both embraced election precincts 155 and 189. The officers of election in those precincts, to distinguish the votes cast at the special election, prefixed to their return of them, these words: "For Congress Second District—Short Term." *Held* that this was proper, and the city register in making out the abstract for the Secretary of State should do the same.

6. ——. The court intimates, though it does not decide, that notwithstanding the change in the congressional districts of the State, by the apportionment act of May, 1882, the order of the Governor for a special election to fill a vacancy to take place November 7th, 1882, in the Second Congressional District, as the same was created and defined by the apportionment act of 1877, was valid.

7. **Costs in Mandamus.** The costs of a mandamus proceeding are to be adjudged only against such of the respondents as are found to have refused to do their duty.

### Mandamus.

Peremptory Writ Awarded.

The information was filed and the alternative writ awarded November 13th, 1882, and the writ was served November 15th, 1882.

*Overall & Judson* for relator.

1. It is claimed in this case that the court has no jurisdiction, because the canvassers have performed their duty, and the matter has passed beyond their jurisdiction. But the facts are: That the canvassers had three days more within which to certify their abstract of votes to the Governor and Secretary of State; that all the officers who are required by law to sign the abstract had not signed it; that the canvassing itself was not completed—the board of canvassers having adjourned without completing the canvass, and without signing the abstract; that the abstract is still in the possession of the register of votes, he never having mailed it, or sent it to the Secretary of State. It would be strange, under these circumstances, if the court has lost all control over these ministerial officers. In determining the question of jurisdiction in a *mandamus* case, the first thing to be inquired into is whether there is any other remedy. *Quo warranto* would not lie, because there is no one in office, or claiming to exercise its functions, and, therefore, no inquiry could be made as to whether any one had usurped the office, and that is the question, and the only question, to be inquired into in such a proceeding. There could be no election contest by the tribunal constituted to try election contests, because there is no one in office, or claiming to hold the office, which the other party seeks to contest. It will not do to say that there will be

another remedy, as soon as one or the other party gets his commission; the question is whether the party who has been wronged has a present remedy at the time of the institution of the proceeding. He is not bound to wait for justice, at the end of a tardy and expensive proceeding. *St. Louis Co. v. Sparks,* 10 Mo. 120; *State v. Rodman,* 43 Mo. 256; *People v. Supervisors,* 12 Barb. 221; *Lewis v. Commissioners,* 16 Kas. 102; s. c., 22 Am. Rep. 275; *State v. Commissioners,* 23 Kas. 264; *Bisbee v. County Canvassers,* 17 Fla. 9; *Clark v. McKenzie,* 7 Bush 523; *Kisler v. Cameron,* 39 Ind. 488; Moses on Mand., 90; *Elisha Strong, Petitioner,* 20 Pick. 484; *Dew v. The Judges,* 3 Hen. & M. 1; *State v. County Judge,* 7 Iowa 186; *State v. County Judge,* 7 Iowa 390. As to the nature and extent of the authority which may be exercised by the court in such cases, the doctrine is well settled in the two cases of *State ex rel. Ford v. Trigg,* 72 Mo. 365, and *State ex rel. Metcalf v. Garesche,* 65 Mo. 488.

2. The law, then, is plain, and the facts are equally plain. The poll-books show that there were two districts, and that the 18th ward of the city of St. Louis was embraced in both of them. The vote in the Second District is given, the other district was the Ninth—by law there could be no other—the other votes are shown by the returns to have been given for Congress in that precinct from which the returns came, and in the same ward (the 18th), and if for Congress in the 18th ward they were given for the candidates in the Ninth District because the votes stated in the returns to have been given for Congress in the Second District excludes the idea that they could have been given for any other than the Ninth District.

3. But there is another fact equally conclusive in this case. The law is, and the court will take judicial notice of it as a matter of fact, that the Second Congressional District has no existence in the city of St. Louis; that neither the 15th ward nor the 18th ward of the city of St. Louis are in the Second Congressional District, but that

they are in the Ninth District, and that a vote for Congress in either one of those wards is a vote for Congress in the Ninth District and none other, because no other Congressional district has an existence there. See Sess. Acts 1882, p. 3, §§ 3, 10 and 16 repealing the apportionment act of 1877. Sess. Acts 1877, p. 10. The act of 1882 abolished the Second District as it existed under the act of 1877. The legislature of Missouri might have provided for filling the vacancy in this district, but they did not. Congress might have made provision for it, but Congress failed to make any such provision. There was, therefore, no authority for holding an election to fill it.

*Leverett Bell* for respondents.

1. In passing upon an application for a *mandamus* to compel an officer to perform a ministerial duty, the court steps into the place of the officer, and in determining the extent of his duty in the premises, it is subject to the same legal limitations which govern the officer himself in the discharge of his official functions. The writ of *mandamus* neither creates nor confers power upon the officer to whom it is directed, but merely commands the exercise of powers already existing. High on Ex. Leg. Rem., § 32; *Johnson v. Lucas*, 11 Humph. 306; *Luce v. Mayhew*, 13 Gray 83, 85; *State v. Garesche*, 65 Mo. 480; *Dunklin Co. v. Dist. Ct.*, 23 Mo. 454.

2. The register and justices of the peace who are required by law (Acts 1881, p. 55, § 21) "to examine and cast up the votes given to each candidate," have no right to go behind the certified returns made by the judges and clerks of the election; any error in their certificate can only be corrected by the tribunal authorized by law to determine such election when contested. Their duties are only ministerial. *Mayo v. Freeland*, 10 Mo. 629; *State v. Trigg*, 72 Mo. 365; *State v. Harrison*, 38 Mo. 540; *State v. Rodman*, 43 Mo. 256; *State v. Steers*, 44 Mo. 223; *State v.*

*Garesche*, 65 Mo. 480; *Felt's case*, 11 Abb. Pr. (N. S.) 203; *Moore v. Jones*, 76 N. C. 182; *People v. Head*, 25 Ill. 325; McCrary on Elections, § 82.

3. Under the rule above stated the defendants in this case had no right to look beyond the face of the returns received from precinct 189 to determine what votes were cast for candidates for office at said precinct. No knowledge could be conveyed to their minds except through the words and figures actually appearing on these returns. But the returns from precinct 189 do not show any votes cast for a representative of the Ninth Congressional District. Defendants have no right to insert the word "ninth" in these returns, nor have they the right to presume that certain votes there appearing for Congress ———— District, were in fact cast for a representative of the Ninth District; nor can they act upon any supposition or theory of their own as to the word "ninth" having been omitted by mistake. The law provides other remedies for the correction of such errors and omissions. To leave such matters to the speculations and guesses of canvassing officers would be subversive of the safeguards which the law has wisely thrown around the methods of conducting elections. The canvassing officer acts arithmetically, and must assume nothing. *Moore v. Kessler*, 59 Ind. 152; *People v. Tisdale*, 1 Doug. (Mich.) 59; *Clark v. Board of Examiners*, 126 Mass. 282; *Opinions of the Justices*, 64 Me. 596; *People v. Cook*, 8 N. Y. 67

4. In precinct 155 the return reads, "For Congress— S— District." In order to count this for relator, the canvassers would not only be obliged to fill a blank, but also to strike out a letter which upon its face indicates a district other than the ninth. The reasoning of the cases cited under point three, *supra*, applies with still greater force to the return from this precinct.

NORTON, J.—This is a proceeding by *mandamus* instituted by relator, a candidate for congress at the last gen-

eral election, and he seeks in the information as amended
by leave of court, to compel the respondents, as a board of
canvassers charged with the duty of canvassing the returns
of an election held in the city of St. Louis on the 7th day
of November, 1882, to canvass and count the return of
votes cast in precinct 155 in the Fifteenth ward of said
city, and in precinct 189 in the Eighteenth ward of said
city, which it is alleged they unlawfully refused to canvass
and count.

There are but two questions presented by the return
of respondents, and the reply thereto, and they are: 1st,
Has this court, under the facts of the case, jurisdiction of
respondents as a board of canvassers? 2nd, Was it the
duty of respondents, in canvassing the election returns, to
count the returns from said precincts 155 and 189, and if
so, have they failed and refused to perform it? These
questions will be considered in the order they are stated.

That this court has jurisdiction by *mandamus* to com-
pel ministerial officers to perform a duty enjoined upon
1. MANDAMUS TO them by law, which they refuse to perform,
COMPEL BOARD OF
CANVASSERS TO at the relation of a person having a right
COUNT ELECTION
RETURNS. and direct interest in the matter, and for the
enforcement of which right he has no other adequate rem-
edy, we have no doubt. Our jurisdiction in the present
case is, however, questioned on the distinct ground that
the respondents as a board of canvassers had completed
the canvass of the votes they were required to canvass and
had finally adjourned, and that respondents Berg and Raum
had made and certified an abstract of the returns of said
election before any legal notice had been given them of
the issuance of the alternative writ. The facts as to
whether the canvass had been completed and as to whether
said board of canvassers had finally adjourned before
legal notification of the issuance of said writ, are dis-
puted by relator, and a number of depositions containing
evidence tending to establish as well as to disprove the
said facts, have been produced before us. In the view

we take of the question we deem it wholly unnecessary to determine whether the allegations as to the completion of the canvass and the final adjournment of the board are proved or disproved, inasmuch as there is no controversy about the fact that the abstract of the returns of the election as made by respondents Berg and Raum was still in the possession of said Berg and under his control at the time legal notice of the issuance of the alternative writ was given, and inasmuch as it further clearly appears that said adjournment of said board (if it took place as alleged) occurred in less than eight days after the election was held, and two days before the time allowed by law to the register and his assistants to complete the canvass.

By section 21 of the laws of 1881, page 55, it is made the duty of the register of the city of St. Louis, within eight days after the close of an election, to take to his assistance two justices of the peace and the recorder of voters, and after making proclamation at the door of his office that the returns are about to be cast up, to proceed publicly to examine and cast up the votes given to each candidate, and give to those to whom he is required by law to issue certificates, having the highest number of votes, a certificate of election.

Section 22 of said law makes it the duty of the register, within two days after the time limited for the examination of the polls and returns, to deposit in the post office, addressed to the Secretary of State, a true abstract of the votes given in such city for members of congress, governor, *  *  judges of the supreme court,  *  * and all other State officers.  *  *  Provided that the abstract of votes given in such city shall be certified to by the register and the justices of the peace aforesaid.  *  *

Under the provisions of law above quoted, the register and his assistants had the full term of eight days after the election in which to complete the canvass of the votes and election returns; and if the count had been completed

and the abstract of votes made on the 13th day of November, the sixth day after the election was held, we nevertheless think that it would have been perfectly competent for the register, at any time before the expiration of eight days after the election, (he having said abstract in his pos· session,) to have called the board of canvassers together to correct any error, either in the abstract or count, occurring from an omission to count a vote that ought to have been counted or from counting a vote that ought not to have been counted. Suppose that after the count was made, and before the time allowed by law in which to make it had expired, it had been brought to the knowledge of the register, clearly and unmistakably, that the returns on a poll, regular in all respects, received by him from the judges who conducted the election at a precinct in said city, from oversight or any other cause had not been placed by him before the board nor passed upon by it, what rule, either in morals or law, would forbid him from convening the board within the time in which he had a right to make the count, to correct such an omission? Would it not, under such a state of facts, have been his plain duty to do so, and thus have honestly performed the functions devolved upon him by law? We answer that it would, and in the event of his failure and refusal to so act, on proper application made, this court would compel such action.

In returning this answer, we are sustained not only by former decisions of this court, but by those of other states. In the case of the *State ex rel. Ford v. Trigg*, 72 Mo. 365, Trigg was county clerk of Ray county, and it was his duty, within eight days after the election at which Ford was a candidate for congress, to take to his assistance two justices of the peace and canvass the returns of said election, make an abstract of the votes, certify and send it to the Secretary of State in two days after the completion of the canvass. Notwithstanding the fact that it appeared in that case that Trigg had called to his assistance two justices and completed the canvass, and had sent to the Sec-

retary of State a certified abstract of the votes cast in said county for Ford and his opponent, Craig, it clearly appearing to the court that said Trigg had counted and certified votes in his abstract, which he had no authority to count or include in the certified abstract, we entertained jurisdiction and compelled him by our peremptory writ to count and certify the number of votes cast for said candidates as certified by the judges and attested by the clerks of the election. It logically follows from said case that the refusal of a canvassing officer to count a return that ought to be counted is as much a dereliction of duty on the part of said officer as for him to count what ought not to be counted; and if this court had jurisdiction in a case where the canvassing board had completed their canvass, as was the fact in the above cited case, and the result of that canvass had been certified to the Secretary of State, the jurisdiction of the court in the case before us, where the result of the work of the canvassers (even conceding for the argument that they had adjourned finally) had not been sent or certified in the form of an abstract to the Secretary of State, is unquestionably established.

It is proper to remark that in the *Ford case* the Secretary of State had taken no action and had not issued any certificate of election. Had such fact appeared in the case it would have brought it within the principle of the cases called to our attention by respondents' learned counsel, of which the case of the *People v. Supervisors of Greene Co.*, 12 Barb. 221, is a type.

The doctrine announced in the *Ford case* is not novel, but has received the sanction of courts of high authority. In the case of *Lewis v. Commissioners of Marshall Co.*, 16 Kas. 102, the direct question was presented " whether the court, after a canvassing board has made one canvass, declared the result and adjourned, would compel it by *mandamus* to re-assemble and make a correct canvass, on the ground that at the prior canvass it had improperly omitted to canvass all the returns ?" The court answered the ques-

tion in the affirmative, holding "that part performance is no more a performance of the duty enjoined than no performance, and that a candidate has as much right to insist upon a canvass of all as he has of any part, and may be as much prejudiced by a partial as by a total failure." The same doctrine is reiterated in the case of *State ex rel. v. Commissioners of Hodgeman Co.*, 23 Kas. 264; also in the cases of the *State v. County Judge Marshall*, 7 Iowa 186, and *State v. Bailey, County Judge*, 7 Iowa 390. The same doctrine is also announced in the following cases: *Kisler v. Cameron*, 39 Ind. 488; *Clark v. McKenzie*, 7 Bush (Ky.) 523, and *Dew v. Sweet Springs District Ct.*, 3 Hen. & Mun. 1. The Massachusetts supreme court has gone further in the case of *Elisha Strong, petitioner*, 20 Pick. 484, where the petitioner was elected a county commissioner, but the board of examiners refused to give him a certificate of his election and ordered a new election, at which another person was elected. It was held that *mandamus* would lie to said board to compel it to give the petitioner a certificate, though he might likewise be obliged to resort to a *quo warranto* to remove the incumbent chosen at the second election. The courts in such cases have proceeded on the theory that the voice of the voter, when spoken through a legal ballot, should not be disregarded and held for naught upon a quibble, and that he, in whose favor it has been spoken as a candidate, is entitled to and should receive the benefit of it.

We think it clearly appears from the authorities cited, as well as on principle, that this court, under the facts in the case before us, as hereinbefore stated, has jurisdiction over respondents to compel them to perform their duty and canvass and count the returns from said precincts 155 and 189, if it should appear that they have omitted and refused to do so; and if it should further appear that it was their duty to count them.

It being admitted that the canvassers did not count said returns, the only question remaining to be considered

is : Was it the duty of respondents to canvass and count the votes as shown by the poll-books and returns from precinct 155 of the Fifteenth ward, and from precinct 189 of the Eighteenth ward ? The return from precinct 155 shows that it contains a statement of the votes cast at election precinct 155 in the Fifteenth ward at the election held November 7th, 1882, and so far as it relates to the votes for candidates for congress, is in the following form, to-wit :

FOR CONGRESS, SECOND DISTRICT—SHORT TERM.

| | | |
|---|---|---|
| James O. Broadhead received................... 134 votes | Britton A. Hill received 8 votes | |
| James H. McLean received..................... 105 votes | —— —— received... ..... votes | |
| —— —— received......... ..... votes | —— —— received... ..... votes | |

FOR CONGRESS – S—DISTRICT.

| | | |
|---|---|---|
| James O. Broadhead received................... 138 votes | —— —— received... ..... votes | |
| James H. McLean received..................... 104 votes | —— —— received... ..... votes | |

The return from precinct 189 shows that it contains a statement of the votes cast at election precinct 189, in the Eighteenth ward, at the election held November 7th, 1882, and so far as it relates to the vote for candidates for congress, is in the following form, to-wit :

FOR CONGRESS, SECOND DISTRICT—SHORT TERM.

| | | |
|---|---|---|
| James O. Broadhead received................... 142 votes | Britton A. Hill received 3 votes | |
| James H. McLean received..................... 55 votes | —— —— received .. ..... votes | |
| —— —— received......... 54 votes | —— —— received... ..... votes | |

FOR CONGRESS, —— DISTRICT.

| | | |
|---|---|---|
| James O. Broadhead received................... 143 votes | —— —— received... ..... votes | |
| James H. McLean received..................... 54 votes | —— —— received... ..... votes | |

It is insisted by counsel that although the above returns show that relator in said precinct 155 received 138 votes, and his opponent, McLean, 104 votes, and in said precinct 189 143 votes, and his opponent, McLean, 54 votes for congress, the canvassers could not count the returns

because the certificate did not state the number of the district. We think the objection not well taken. The fact cannot be controverted that the certificates of the judges show not only the number of votes cast, but also when and where they were cast, for whom they were cast, and the office to be filled by him for whom they were cast.

It was contended by counsel in argument that the words " for congress " did not sufficiently designate the office to be filled by the person voted for, and that the proper designation of the office would have been : " Representative in congress." The words, " for congress," employed by the judges in their certificate are to be construed as they are understood in common parlance. When a person is spoken of as a candidate for congress it is equivalent to saying he is a candidate for representative in congress. In the case of *Applegate v. Egan*, 74 Mo. 264, which was a case of contested election for the office of clerk of the circuit court and recorder of Chariton county, it was contended that the words on the ballots to denote the office for which Egan, the contestee, was a candidate, did not sufficiently designate it, and that, therefore, the ballots could not be counted. The words used on the ballots opposite the name of Egan were " for circuit clerk and recorder." It was contended that the office should have been designated by the words "clerk of the circuit court of Chariton county and recorder," as the office was so designated in the statute. We held that the words used in the ballots, viz.: " Circuit clerk," could by no reasonable intendment have reference to any other office than that of clerk of the circuit court of Chariton county. So the words " for congress " used in the certificate of the judges could by no reasonable intendment have reference to any other office than representative in congress. We cited in support of the view taken in that case the following: *State ex rel. v. Matteson*, 17 Ill. 167; *Cattell v. Lowry*, 45 Iowa 478; *McClure v. McClurg*, 53 Mo. 173; *Sidwell v. Birney*, 69 Mo, 145.

2. ELECTION : office: " for congress."

Besides this, the first section of the act of 1882, page 1, in dividing the State into congressional districts, reads as follows: "The State of Missouri is hereby divided into fourteen congressional districts, the legal voters of each district to elect one member of congress     *     * ," and the 22nd section of the laws of 1881, page 56, under which law the register of the city of St. Louis derives his authority to act, requires him to deposit in the post office, addressed to the Secretary of State, a true abstract of the votes given in such city for members of congress. It thus appears that the general assembly has used the words "member of congress," "for congress," "representative in congress," interchangeably and as meaning the same thing.

We are of the opinion that the certificates and return on said poll-books from said precincts 155 and 189 show on their face all that is required, and that the votes ought to have been canvassed and counted, and for the following reasons: The act of 1881, (Laws 1881, p. 48,) applying to elections in the city of St. Louis, while it provides for the appointment of judges and clerks of election at the various precincts in said city, and also provides that the registration lists furnished them, together with the poll-books and election returns, shall be returned and delivered to the register, does not provide the form of the poll-book to be used nor the form of certificate in making election returns, and we are, therefore, authorized to look for the form of poll-book, and also for the form of election returns to the general election law. We derive our authority thus to look from section 25 of the law of 1881, page 56, which provides "that all elections in such city shall be conducted in all respects as provided in this act and subject to all the provisions of the Revised Statutes entitled 'Of Elections,' so far as they do not conflict with this act." Referring then to section 5497, Revised Statutes, we find it provides that "at the close of the polls the poll-books shall be signed by the judges and attested by the clerks, and after the names therein contained shall be counted, as provided, the

number shall be set down at the foot of the poll-books in the manner provided in the form of the poll-books."

Section 5502 provides that the following shall be the form of the poll-book to be kept by the judges and clerks of election:

Poll book of the election held at ——, in the township of——, in the county of ——, on the —— day of ——, in the year of our Lord eighteen hundred and ——. A B., C. D. and E. F., judges, and J. K. and G. H., clerks of said election, were severally sworn, as the law directs, previous to their entering on the duties of their respective offices.

NUMBER AND NAMES OF VOTERS.

No. 1.... ...  A. B.
No. 2........  C. D.
No. 3........  E. F.

It is hereby certified that the number of voters at this election amounts to ———.

A. B.,
C. D.,  }Judges of Election.
E. F.,

Attest:
J. K.,  } Clerks.
G. H.,

NAMES OF PERSONS VOTED FOR AND FOR WHAT OFFICE, CONTAINING THE NUMBER OF VOTES GIVEN EACH CANDIDATE.

| Governor. | Representative in Congress. | Representative in State Legislature. | | &c. |
| | | Senate. | House of Representatives. | |
| | | | | |

We hereby certify that A. B. had —— votes for governor, and C. D. had —— votes for governor; that E. F. had —— votes for representative in congress, etc.

A. B.,
C. D.,  }Judges.
E. F.,

Attest:
J. K.,  } Clerks.
G. H.,

Taking the words "for congress," used by the judges in certifying the returns from said precincts 155 and 189,

as being equivalent to the words "representative in con-gress," used in the form prescribed by the legislature, their certificates, while being in strict compliance with the form prescribed, contains in addition to what they are required to certify, the following "———— S ———— district," in the certificate appended to the poll-book from precinct 155, and "———— ———— district" in the certificate appended to the poll-book from precinct 189. It is contended that because of the addition of said words, the whole return is vitiated, and that it was the duty of the respondents to re-ject it. We are of a different opinion. The proposition in effect is, that the certification of something by the judges which they were not required to certify vitiates and makes void a certification by them made of all things they were required to certify. The very statement of the proposition refutes and overthrows it, and the maxim " *Utile per in-utile non vitiatur*" may well be applied. It is laid down in section 104, McCrary on Elections, that " the law is well settled that statute certifying officers can only make their certificates evidence of the facts which the statute requires them to certify, and when they undertake to go beyond this and certify other facts, they are unofficial and no more evidence than the statement of an unofficial person. This rule, of course, applies to election returns and to all certifi-cates which are by law required to be made by officers of elections or of registration, or by returning officers. They can only certify to such facts as the law requires them to certify. The certificate of such an officer is not, however, vitiated by the fact that it contains the certification of facts outside of those which the officer has a right to certify. If it in fact certifies the proper facts it is good and the re-mainder of the certificate is to be rejected as surplusage." The general assembly in prescribing the form of poll-books to be used and form of certificate to be given by judges of election, have not enjoined it upon the judges as a duty, in certifying votes cast for a candidate for congress, to cer-tify in their return the number of the congressional dis-

trict, nor has it enjoined it as a duty upon the clerks of the county courts who are required to canvass the election returns as certified by the judges and make a fair abstract of the votes given in the respective counties and certify the same to the Secretary of State, to state in said abstract in what district such votes were cast; nor has the legislature enjoined it as a duty upon the register of the city of St. Louis, in making an abstract of votes cast in said city for a candidate for congress and certifying the same to the Secretary of State in the same manner as clerks of the various counties are required to certify, to state in his certificate the number of the congressional district in which the votes were cast. While the legislature has not devolved such duty upon any of the officers above named in respect to the abstracts which the clerks of the county courts and the register of the city of St. Louis are required to certify to the Secretary of State, it has enjoined upon him (by section 5513, Revised Statutes,) the duty of opening such abstracts when he receives them, in the presence of the Governor, and casting up the votes given for all candidates for, any office &ast; &ast; except governor and state officers and giving "to the person having the highest number of votes for member of congress from each district, certificate of election."

In conducting a general election in the city of St. Louis the judges of election are to use the same form of poll-book, except as such form may be modified by the laws cf 1881, page 48, and to use the same form of certificate in making their returns as are required to be used in all the counties of the State; but instead of making such returns to the clerk of the county court they are required to make them to the register of said city, and when made the said register, with the assistance of two justices of the peace and recorder of voters of said city, is required to canvass and count the returns, and in two days after such canvass to make (as county clerks are required to make in their respective counties) a true abstract of the votes given

The State ex rel. Broadhead v. Berg.

in such city for members of congress and all other state officers. The abstract so made the register is required to transmit to the Secretary of State, certified to by him and the justices of the peace called by him as assistants. It may here be observed that the certificate last referred to if signed by the register and one of the justices, would be valid. *Quayle v. M., K. & T. R'y Co.*, 63 Mo. 465.

Inasmuch as there are embraced within the territorial limits of the city of St. Louis two entire congressional dis-

4. CONGRESSIONAL ELECTION IN ST. LOUIS: register's abstract of votes.

tricts, viz.: the Eighth and Ninth, and a part of a third, viz.: the Tenth, the question presents itself, how the register of said city shall proceed in making the abstract of votes cast in said city for members of congress. We are of the opinion that in making such abstract, so far as votes cast for members of congress are concerned, it should be made so as to show the number of votes cast in each ward of said city for members of congress. The wards of the city are integral parts of the congressional districts in the city, as counties are integral parts of congressional districts composed of more counties than one. When such an abstract is certified to the Secretary of State, it will then be his duty to give to the persons having the highest number of votes for member of congress from each of said districts certificates of election.

It appears from the information, return to the alternative writ and reply thereto, that at the general election held in said city on the 7th day of November, 1882, a member of congress was to be elected from the Ninth Congressional District of said city, as said district was constituted under the apportionment of the State into congressional districts by the law of 1882, page 1. And it also appears that a special election was ordered to be held in said city, at the same time the general election was held, for the election of a member of congress to fill a vacancy in the Second Congressional District as such district was constituted by the 2nd section of the laws of 1877,

page 11. It further appears that the Ninth Congressional District, as constituted by the law of 1882, embraces the First, Second, Third, Tenth, Thirteenth, Fifteenth, Seventeenth, Eighteenth, Nineteenth, Twenty-sixth and Twenty-seventh wards of said city ; and it also appears that all of said wards except the 36th precinct of the Third ward, the whole of the Thirteenth ward, precincts 159 to 162 of the Fifteenth ward, and precincts 205 and 206 of the Nineteenth ward, are in the bounds of the Second Congressional District, as constituted by the law of 1877, *supra*, and in which there was a vacancy. This anomalous condition of things created a necessity and imposed a duty on the judges, in making their returns of the votes cast for the candidates to fill this vacancy, to so designate them as to show that fact, and this, we think, they have sufficiently done by the statement made in their returns, " For Congress, short term." And as there was no vacancy or short term to be filled by an election in the Ninth or either of the other districts as constituted by the act of 1882, a like necessity existed for the judges to designate the Second district as the one in and for which the votes were cast for candidates for the short term in order to avoid confusion in the returns, and this, it appears from the certificates made from precincts 155 and 189, they have done, and the like designations should be made by the register in making his abstract of such votes.

In the argument of counsel it was suggested that the Second Congressional District, established by the act of 1877, *supra*, had been abolished by the act of 1882, and that the legislature had made no provision for an election to fill the vacancy in said district, that, therefore, the election held for that purpose was a nullity. While it is not necessary to a decision of the case before us that the point raised should be passed upon, we deem it not inappropriate, as bearing upon the question, to cite sections 176 and 177 from McCrary on Elections, as follows : " It was held by the house of representatives, after

a long and able discussion, that when the legislature of a state has failed to provide the time, place and manner of holding an election to fill a vacancy occurring in the house, that the governor of such state, upon being informed of the vacancy, may issue a writ of election, and therein fix the time and places of holding such election (case of *John Hoge of Penn.*, Cl. & H. 135). The power given to the governor by the 2nd section of the 1st article of the constitution of the United States, to issue writs of election to fill vacancies carries with it the power to fix the times and places of holding such election, in cases where such times and places are not fixed by law." Section 177. "If a case should arise where no authority, either state or federal, has fixed either the time or place of electing a representative in congress no election could be legally held, and yet if in such an event the electors by common consent should come together and choose a representative, the house might validate their action and admit their chosen representative."

In the case of *Hunt v. Menard*, 2 Bart. 477, in discussing an act of the legislature of Louisiana, making a new division of the state into five districts, and by its terms purporting to repeal all laws and parts of laws in conflict with the act, but silent on the subject of vacancies that might occur in the districts as then existing, it was said, "That whatever power a state legislature may have in the matter, it is absurd to say that a district when once established, and a representative chosen therein, is not to continue for the whole congress for which the election has been once operative."

We are of the opinion that it was the duty of respondents to count the votes of said precincts 155 and 189 for the reasons indicated herein, and the respondents having failed to perform that duty, the writ will be made peremptory and respondents commanded to meet on the 11th day of December, 1882, and count and canvass said returns

and certify an abstract of the returns in conformity to this opinion to the Secretary of State.

It appearing from the answer of respondents Taaffe and Hoblitzelle that they did not refuse to canvass and count said returns, but insisted that they should be counted, the costs of this proceeding will be and are hereby adjudged against respondents Berg and Raum.

7. COSTS IN MANDAMUS.

It is further ordered that the clerk of this court cause to be delivered to respondent Berg the poll-books of said precincts 155 and 189, and also the abstract of voters attached to a deposition in this cause. All the judges concur.

HENRY, J.—I concur in the foregoing opinion so far as it relates to the duty of respondents to return the votes cast in the 155th precinct of the Fifteenth and the 189th precinct of the Eighteenth wards of the city of St. Louis. With respect to the validity of the election to fill a vacancy in the old Second Congressional District, I express no opinion, not having examined the subject because I did not deem it necessary to the determination of the principal questions involved in this proceeding.