THE STATE OF MISSOURI ex rel. STEADLEY, Relator, Appellant, v. SILAS A. STUCKEY et al., Respondents.

### Kansas City Court of Appeals, February 6, 1899.

1. **Elections:** CERTIFICATE OF ELECTION OFFICERS: TALLY SHEETS: COUNTING THE VOTE. A separate tally sheet is unknown to the Missouri election laws, which require the clerk to keep the tally on the poll book as the judges read the votes from the tickets, and the total of such tallies is set down by the clerk under the inspection of the judges in the poll books to which the certificate must be attached and no other certificate has any force or validity whatever.

State ex rel. v. Stuckey.

2. ———: MANDAMUS: ISSUE OF FACT: DUTY OF CANVASSING BOARD. The duty of a canvassing board is purely ministerial and is confined to casting up the vote certified by the election officers, and in a mandamus proceeding to compel the performance of such duty where the relator has the requisite qualifications there will be no investigation of his title beyond such election certificates.

3. ———: ———: ADJOURNMENT OF CANVASSING BOARD. A canvassing board may be compelled to reassemble and count the certified vote although not served with a writ of mandamus until after its adjournment.

4. ———: ———: CANVASSING BOARD: DEMAND. It is the duty of a canvassing board to count the vote and no necessity for a demand arises and mandamus will lie without such demand.

5. ———: ———: SERVICE OF WRIT: COMPUTATION OF TIME. The election was on the eighth of November. The writ of mandamus to the canvassing board to reassemble and count the vote was served on Monday the fourteenth. Held, the eighth under the rule for the computation of time should be excluded from the count. The last of the five days fell on Sunday and service on Monday was in time.

*Original Proceeding by Mandamus.*

PEREMPTORY WRIT AWARDED.

McREYNOLDS & HALLIBURTON and THOMAS & HACKNEY for appellant.

(1) In canvassing the election returns, and in casting up the votes given to each candidate, the county clerk and justices of the peace act in a ministerial capacity. They have no right to disregard any returns lawfully made, nor to go behind the returns certified by the judges and clerks of election. If the judges and clerks have made mistakes in receiving and casting up the votes and certifying to the same, the error can only be corrected by the tribunal authorized to determine contested elections. Mayo v. Freeland, 10 Mo. 630; State ex rel. v. Trigg, 72 Mo. 365; Bowen v. Hixon, 45 Mo. 345. (2) Mandamus is the proper remedy to compel the canvassing board to properly canvass and cast up the returns. State ex rel. v. Trigg, 72 Mo. 365; State ex rel. v.

Berg, 76 Mo. 136. (3) The election was held on November 8, 1898; the canvassing board met and improperly cast up the returns on Saturday, November 12; the alternative writ was issued and served on Monday, November, 14. This was within the five days provided by law, in which the county clerk and the justices should canvass the returns. Sunday should not be counted as one of the days on which the canvassing board should perform its duty. Bank v. Williams, 46 Mo. 17-20; Thayer v. Felt, 4 Pick. 354; 26 Am. and Eng. Ency. of Law, pp. 10 and 11. (4) Where a canvassing board meets and improperly canvasses the returns, and even certifies the returns to the secretary of state, and adjourns, no certificate of election being issued to either party, the court will, by mandamus, compel a reassembling of the board and the proper canvass of the returns. State ex rel. v. Berg, 76 Mo. 136.

HOWARD GRAY and CUNNINGHAM & DOLAN for respondents.

(1) The defendants as a board of canvassers completed their canvass of the votes and signed up their certificate as to the votes received by each and all of the candidates, after counting every precinct and ward to be counted and canvassed, and filed that certificate in the county clerk's office, and then adjourned *sine die.* The board having thus completed its work and thus adjourned, it has gone out of existence and can not reconvene as a board. McCreary on Elections [3 Ed.], 232; Bowen v. Hixon, 45 Mo. 343; Clark v. Buchanan, 2 Minn. 346; State v. Donneworth, 21 Ohio St. 216; State v. Stewart, 26 Ohio St. 216; Rosenthal v. Board of Canvassers, 50 Kan. 129; 33 N. Y. 603; 22 Barber (N. Y.), 552. (2) There was no demand made upon the defendants as a board to count one hundred and twenty-three votes from the precinct in question instead of one hundred and twenty-two for relator. There was not even

a request made before the board adjourned that this might be done.   This is a prerequisite to the issuance of the writ. State ex rel. v. Lesueur, 136 Mo. 459; Ingerman v. State, 27 N. E. Rep. (Ind.) 499; State v. Slick, 86 Ind. 501; Oroville, etc., Co. v. Supervisors, 37 Cal. 354; Jefferson Co. v. Arrghi, 51 Miss. 667; State v. Schaak, 28 Minn. 358; State v. Davis, 17 Minn. 429; Merrill on Mandamus, secs. 222; 223, 224; High on Extraordinary Legal Remedies, sec. 13; County Court of McCoupin Co. v. People, 58 Ill. 191. (3)   In order for the peremptory writ to go, there must be on the one hand, 'undoubted duty on the part of the defendants to reassemble as a canvassing board, and after having reassembled as such canvassing board, to cancel and annul their first certificate, giving relator five thousand, five hundred and seventeen votes, and make another certificate, giving relator five thousand, five hundred and eighteen votes.   The duty of the defendants as a board to count one hundred and twenty-three votes in the precinct in question for Steadley is, to say the least of it, doubtful, because an examination of the poll book will disclose three certificates made by the judges and clerks.   Revised Statutes 1889, sec. 4680.   The third certificate is simply a repetition of the names and of the number of the votes, in the same form as the second.   Now relator contends that the second certificate should be disregarded because it is not provided for by statute.   We assert that it is provided for by statute, because it is in the form required by section 4680. State ex rel. v. Steers, 44 Mo. 227.   (4)   But even though the court should hold that it was the clear and undoubted duty of the board of canvassers to have counted the vote as shown by the third certificate and have given relator Steadley one hundred and twenty-three votes in the precinct in question, relator must also show that he had a clear right to have counted for him in that precinct one hundred and twenty-three votes, and while the board of canvassers being ministerial officers, could not go behind the face of the returns, the

court may hear evidence *aliunde* and determine from all the facts and circumstances whether or not the relator has a clear right to the remedy which he asks. This is held by several decisions of our own state, as well as others. People v. Booth, 49 Barb. (N. Y.) 31; People v. Board of Canvassers, 127 N. Y. 360; State ex rel. v. Albin, 44 Mo. 346; State ex rel. v. Williams, 99 Mo. 291; State ex rel. v. Newman, 91 Mo. 445; State ex rel. v. Buhler, 90 Mo. 570.

ELLISON, J.—An alternative writ of mandamus was issued in vacation by one of the judges of this court, returnable to the court in session. Return has been made by respondents and the cause heard by the court. Relator and John M. Malang, were candidates at the regular election in 1898, for the office of the recorder of deeds for the county of Jasper. Respondents are the canvassing board, composed of Stuckey, as county clerk, and McAdams and Tyree as justices of the peace of said county.

Relator claims that in the third ward voting precinct in Webb City, in Joplin township in said county, at such election, he received one hundred and twenty-three votes for said office, but that respondents, as such canvassing board refused to count for him that number and did count for him one hundred and twenty-two votes. That by counting him one hundred and twenty-two votes there would be no election, since the result would be a tie between relator and Malang. But if there should be counted for him one hundred and twenty-three votes, he would be elected by a majority of one. He asks that respondents be ordered to reassemble as such board and count for him one hundred and twenty-three votes as certified to them.

The controversy has arisen in consequence of the certificates made by the judges and clerks of election at the precinct aforesaid and returned to respondent Stuckey as county clerk. They returned the poll book with three certificates. The first of these is that required by section 4675 and is not

questioned; the controversy relates to the second and third. The second shows relator to have received one hundred and twenty-two votes and the third that he received one hundred and twenty-three votes. The only certificates required to be made are provided for by section 4680, Revised Statutes 1889, which is as follows:

"Sec. 4680. Form of Poll Book—Ballot Boxes Not to be Opened, When.—The following shall be the form of the poll book to be kept by the judges and clerks of election:

"Poll book of the election held at———, in the township of———, in the county of———, on the—day of———, in the year of our Lord eighteen hundred and —. A. B., C. D., E. F. and X. P., judges, and J. K., C .H., B. B. and T. W., clerks of said election, were severally sworn, as the law directs, previous to their entering on the duties of their respective offices.

Number and Names of Voters.

| No. 1................... ⎱ A. B. |
| No. 2................... ⎬ C. D. |
| No. 3................... ⎰ E. F. |

It is hereby certified that the number of voters at this election amounts to———.

A. B.,
C. D.,      } Judges of Election.
E. F.,
X. P.,

Attest:

J. K.,
G. H.,      } Clerks.
B. B.,
T. W.,

State ex rel. v. Stuckey.

Names of Persons Voted for and for What Office, Containing the Number of Votes Given Each Candidate.

| Governor. | Representatives in Congress. | Representatives in State Legislature. | | Etc. |
| --- | --- | --- | --- | --- |
| | | Senate. | House of Representatives. | |
| | | | | |

"We hereby certify that A. B. had——votes for Governor, and C. D. had——votes for Governor; that E. F. had——votes for representative in congress, etc.

J. K.,
G. H.,
B. B.,
T. W.. } Clerks.

A. B.,
C. D.,
E. F.,
X. P., } Judges.

In undertaking to comply with the statute, as it relates to the second certificate, the judges and clerks of election (following the form of the poll books) placed under the head of "Names of persons voted for and for what office, containing the number of votes given each candidate," the names of persons voted for and for what office and the *sum, or total,* of the number of votes each received, thus:

"For Recorder of Deeds.

John M. Malang rec'd 108 votes.

Fred M. Steadley rec'd 122 votes."

After a like statement of the vote of all other candidates, they appended to this and signed the following certificate: "We certify the foregoing to be correct.    Dated this 8th day of November, 1898."

At the top of the next page of the poll book is the beginning of a statement in the form of a certificate of the total number of votes given each candidate.    Thus, "We hereby certify

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*

| | |
|---|---|
| That John M. Malang had 108 votes | For |
| | Recorder |
| That Fred W. Steadley had 123 votes | Of Deeds." |

continuing in the same manner to give the vote of all other candidates at the election, when it is duly signed by the judges and clerks of election.

It will thus be seen that the judges and clerks of election have placed a certificate not called for by the statute in between the columns and the final certificate required by the statute.    Such certificate is not only not contemplated by the statute, but placing in the columns the total or sum of all the votes cast for the candidates named was also unauthorized.  This portion of the poll book was intended for the tally of the votes as read by the judge of election performing that duty.    A separate paper for a tally sheet is unknown to the law, though used in many parts of the state in practice. State ex rel. Ford v. Trigg, 72 Mo. 365.    But that this columned space in the form of the poll book given in the statute was intended as the place for the tally of the vote as read, and not for a mere statement of the total of the vote as given by the election officers in this case, is apparent.    The statute contemplates that the tally of the vote kept by the clerks as

ELECTIONS: certificate of election: officers: tally sheets: counting the votes.

the vote is being counted out of the ballot box shall be a part of the poll book.

That we are giving the correct interpretation to the statute is made clear by reference to other sections. It is provided in section 4673, that the ballots shall be taken from the ballot box by one of the judges of election "who shall read distinctly" the names of the candidates voted for and the office for which he is a candidate. In section 4676, it is provided that, "the clerks shall enter in separate columns, under the names of the persons so voted for, as hereinafter provided *in the form of the poll books, all the votes so read by the judges aforesaid.*" This contemplates that the votes as read by the judge shall be credited, on the poll books, by the clerks, to the proper candidate. This is made more manifest by reference to section 4679, where it is provided that, "After the examination of the ballots shall be completed the whole number of votes for each person shall be enumerated under the inspection of the judges and set down as directed in the form of the poll books, and be publicly proclaimed to the persons present." That is, when the ballots have all been read and credited *on the poll books by the clerks,* to the proper candidates, at the time they are read, then they are counted by the clerks under the inspection of the judges "and the result of the count is set down as directed in the form of the poll books;" that is to say, in the last certificate, that being the only place where a statement in the form of the total vote is required. That is the authoritative addition of the votes which have been entered by the clerks in the poll books as they are read by the judge. The election officers here have attempted to insert a total in the space designed for a record of the vote as it is called off by the judge. It is unauthorized. The certificate attached to it is unauthorized and can not be allowed to affect the one required by the statute. It should not have been regarded by the respondents. It is altogether unreasonable to suppose that the legislature intended that

there should be two authoritative statements of the same thing, by the same officers, in the same paper. In Kansas, where the statute is said to be similar to ours, the tally of the vote as read by the judge of election, is kept in the poll books, is bound in as a component part of the books, and from it, as we have endeavored to show here, the count should be made and the result inserted in the final certificate. Rice v. County Board, 50 Kan. 149. The total vote for each candidate is ascertained by the judges, as required by section 4679, from the tallies entered by the clerks, during the reading of the ballots, as is provided in section 4676. The latter section imposes a duty on the clerks alone. It contains nothing to which the judges certify. It only directs the setting down of the data from which the final certificate is made up. The fact that in this case, figures purporting to be the total vote of each candidate have been thus placed without authority and have had attached to them a certificate not authorized by the statute, should not, as before stated, be regarded by the canvassing board. For, a statement or certificate of anything not called for by the statute, is a mere nullity. "The law is well settled that statute certifying officers can only make their certificates evidence of the facts which the statute requires them to certify, and when they undertake to go beyond this and certify other facts, they are unofficial and no more evidence than the statement of an unofficial person." State ex rel. Broadhead v. Berg, 76 Mo. 136; quoting from and adopting McCrary on Elections, section 104.

2. But it is insisted that though it be conceded that the certificate giving relator one hundred and twenty-three votes is the certificate required by statute and ——: mandamus: issue of fact: duty of canvassing board. conceding that it should have been counted by the respondents, yet, that as the writ of mandamus is discretionary with the court, it should be refused if it appears that relator is not, in point of fact, qualified or entitled to hold the office of recorder of deeds.

It is true that if it appears that the relator in mandamus is not clearly entitled to the office he seeks, he can not have the aid of the writ. Thus in State ex rel. v. Albin, 44 Mo. 346, it appeared by the proceedings that the election under which relator claimed the office was void for lack of a preceding registration. In State ex rel. Snyder v. Newman, 91 Mo. 445, the relator sought to compel a certificate of election as mayor of Pierce City to be issued to him. But it appearing that he was not eligible the writ was refused. And so where an effort was made to compel the issuance of a certificate of election to the office of marshal of St. Louis. State ex rel. Thomas v. Williams, 99 Mo. 291.

But in this case relator's qualifications are conceded except as to the point of receiving a majority of the votes. This important particular in relator's behalf respondents say does not appear; or àt least, it is a doubtful question, which alone is said to be sufficient to authorize a denial of the writ. This brings us back to the question of the fact and how it should be ascertained by the board. In our opinion it must be ascertained from the statutory certificate of the election officers alone, if one has been made. In this case, under the only evidence to which we can look, there is no doubt.

In this state the duty of the canvassing board is purely ministerial. It only casts up the vote certified to it by the judges and clerks of election. It can not refer to the tally sheets and if it does, it may be compelled by mandamus to count the return as certified. Mayo v. Freeland, 10 Mo. 629; State ex rel. Ford v. Trigg, 72 Mo. 365. The wisdom of this rule is well stated in those cases and is well illustrated by the mode .adopted by respondent Stuckey to ascertain the true vote of the precinct in question, though it is conceded to have been done in good faith. He testified that discovering one certificate put the vote for relator at one hundred and twenty-two votes and the other at one hundred and twenty-three, he

sent two men (the chairmen of the respective political committees) from Carthage, the county seat, over to Webb City to ascertain which was correct, and that one of them telephoned back that the certificates on the copy of poll book retained at Webb City were like those returned, but that the "tally sheet showed 122 and that 122 appeared to be right." When respondent Stuckey was asked why he cast the vote up as one hundred and twenty-two, he answered that: "I waited until they returned on the car, and Crane and Wharton, the chairmen of thes̓e committees, came to my office; and it appeared to the board that one hundred and twenty-two votes was right and one hundred and twenty-two votes were counted for Mr. Steadley." It is disclosed now that one tally sheet showed one hundred and twenty-two and the other one hundred and twenty-three votes. It thus appears that the count of the vote was determined by what the board learned from two men in the foregoing manner. And, as just stated, it is a fit illustration of the wisdom of the rule that the canvassing board has no authority to go behind or to look beyond, the returns made by the judges and clerks. The canvassing board are in no sense a tribunal to inquire into the right of contestants for office, they act as a piece of machinery on the matter certified to them. And while it is true, within the limits we have stated, the courts will refuse a writ of mandamus where it does not clearly appear the relator is entitled to the office he seeks, yet it must not be expected that in order to refuse a writ they should go into an examination of the rights of the parties to such extent as to cause such inquiry to take the place of a contested election. The office of a writ of mandamus, in the respect here considered, is to compel the performance of a ministerial duty. That duty is to be ascertained from the returns of the judges and clerks of election.

3. The alternative writ was not served on respondents until after they had completed the canvass and adjourned.

State ex rel. v. Stuckey.

The respondents therefore contend that the
—: —: adjourn-  board became *functus officio* before the service
ment of canvass-
ing board.  and that they can not now be required to reas-
semble and cast up the proper return. And
this notwithstanding the service of the writ was had within
the five days allowed for a canvass of the votes, and while the
clerk yet had all the papers returned to him and before he had
made out any certificate. Some remarks in Bowen v. Hixon,
45 Mo. 340, concerning a contested election, on a point not
involved here, give color to respondents' contention. But the
cases of State ex rel. Broadhead v. Berg, 76 Mo. 136, and
State ex rel. Ford v. Trigg, 72 Mo. 365, are undoubted
authority for the power of this court to order the canvassing
board to reassemble and count the properly certified vote, and
we so hold.

4. It is next insisted that there was no demand made
upon the members of the board to reassemble and count the
proper vote for relator. The duty to count the proper vote
cast at an election does not arise on a demand.
—: —: canvass-
ing board: de-  It exists without the demand. No demand is,
mand.
therefore, necessary.

In all instances where there is no duty to perform until
a request or demand has been made to do the act, then a
demand is necessary. Such was the case of State ex rel.
Doud v. Lesueur, 136 Mo. 459, and other cases cited by
counsel.

5. It is suggested that the writ was not served within
the five days limited by law for the returns to be cast up by the
canvassing board. R. S. 1889, sec. 4684. The
—: —: service  election was held on November 8, 1898, and
of writ: computa-
tion of time.  the writ was served on Monday the fourteenth,
in time for the board to reassemble on that day.
The statutory rule for computing time in this state is to ex-
clude the first day and include the last, unless it be Sunday,
when it must also be excluded. R. S. 1889, sec. 6570. This

means it must be excluded from the count of the time. Evans v. Railway (not yet reported). If we exclude the first day which was Tuesday, the eighth, the last of the five days would be Sunday. It must by force of the statute, be excluded also. Service on Monday was therefore in time.

Counsel for either side have, in connection with cases from this state, cited us to authority from other jurisdictions, but as we find the points decided in the latter are covered by the adjudications in this state, we have not referred to them, except in one instance, in the course of our discussion of the questions involved.

The result of the foregoing is that we think that a peremptory writ should be awarded as prayed and it is so ordered. All concur.