EUGENIA PALEA, ALSO KNOWN AS MRS. L. PALEA AND MRS. LUTHER PALEA, *v.* HAROLD W. RICE, J. PATRICK COCKETT, AND SAMUEL ALO, CONSTITUTING THE BOARD OF TRUSTEES OF THE POLICE PENSION FUND OF THE COUNTY OF MAUI, TERRITORY OF HAWAII.

No. 2297.

SUBMITTED MARCH 30, 1937.                    DECIDED APRIL 20, 1937.

COKE, C. J., BANKS, J., AND CIRCUIT JUDGE METZGER IN PLACE OF PETERS, J., ABSENT.

OPINION OF THE COURT BY CIRCUIT JUDGE METZGER.

This is an appeal from a judgment and peremptory writ of mandamus requiring the appellants, hereinafter referred to as respondents, to pay to appellee, Eugenia Palea, hereinafter referred to as petitioner, the sum of $1431.71 in satisfaction of unpaid pension to which petitioner claimed to be entitled under Act 9, L. 1929, as amended by Act 144, L. 1931 (now incorporated in R. L. 1935 as subsections 3 and 4 of section 7905, pt. 3, ch. 259), during the period from April 29, 1929, one month after the effective date of Act 9, as amended by Act 144, to June 30, 1933.

The record shows that the petitioner had received a pension of $25 per month since July 1, 1921, on account of the death of her husband, and was on the membership or beneficiary roll of Maui police pension fund, as a dependent widow having two children under sixteen years of age. This pension fund was originally established under the provisions of Act 220, by the legislature of 1917. This initial general pension law provided for the creation of a fund in each county and city and county and for its government and management by a board of trustees consisting of the chairman of the board of supervisors, or the mayor in the case of a city and county, together with the treasurer and auditor of the county or city and county. The county clerks were made secretaries of the boards of trustees and required to keep true and correct accounts of the proceedings of such boards. The purpose of the funds and boards of trustees was to pay pensions to disabled and retired police officers, firemen and bandsmen employed by the several counties and city and county and upon the death of such employees while in the line of duty or as a result of the performance of duty, to pay monthly pensions to their dependent widows, their children under sixteen years of age, or to other dependents if they left no widow or children under sixteen.

The Act consisted of ten main sections. Section 1 provided generally for the creation of the pension fund, establishment of boards of trustees and their general duties and powers. Section 2 provided for the derivation of the fund, authorizing the acceptance of gifts of all kinds, and in a subsection, numbered "2," says: "2. A sum equal to one per centum of the total amount collected on account of the general fund of the county or city and county for the year previous shall be set aside annually from the general fund of the county or city and county, which sum shall be placed by the treasurer of such county or city and county to the credit of the said pension fund in two equal semi-annual installments, namely on the last day of June and December, respectively, of each year, and shall be used or devoted solely for the purposes of such pension fund."

Section 3 is divided into a number of paragraphs and numbered subsections or subdivisions. The first paragraph of this section deals with the investment of surplus funds, some requirements of which call for, or authorize, discretion on the part of the trustees, while other parts are mandatory in their provisions; the second paragraph, numbered "First," provides for determination by the trustees .if members of the police force, fire department or band should be retired permanently or temporarily for disability on part pay, and gives the board of trustees authority to fix the rate of pension pay in its discretion between one-quarter and three-quarters of the monthly salary earned by the employee. The subsection following, numbered "Second," provides for retirement for service; this subsection gives no discretion whatever to the trustees; it merely defines the rights of the employees to retirement and the rates of pensions for stated years of service. The next subsection, numbered "Third," provides that upon the death of a member of the police force, fire department or band while in the line of duty or as a result of the performance of his

duty, there shall be paid not exceeding $100 for funeral expenses and, "should such deceased member leave a dependent widow or leave a child or children under the age of sixteen years or both, *then there shall be paid to such widow* out of such fund twenty-five dollars ($25.00) per month until her death or remarriage and to such children each five dollars ($5.00) per month until they arrive at the age of sixteen years, respectively, to be paid to the mother of such children, if living, for their benefit, so long as such children shall reside or be supported by her." Except as to the sum to be expended for funeral expenses this subsection gives no discretion to the board of trustees.

The next following subsection numbered "Fourth," provides for authorizing and awarding pensions to dependent parents or dependent brothers or sisters of such deceased employee in the event he "shall die not leaving a widow or child under sixteen years of age." This subsection gives certain discretionary powers to the board of trustees in determining the measure of dependency and in authorizing pension awards to this class of prospective beneficiaries, and its first paragraph closes with the following statements: "Any pension authorized as provided in this section shall be subject to reduction by the board of trustees whenever, in its judgment, the condition of the pension fund or any other circumstances makes it reasonable, fair or necessary. Any pension so reduced may thereafter be restored or further reduced as the board of trustees may deem best."

No other provisions of Act 220 are of any concern in this case, except, possibly, the first part of section 5, as follows: "If at any time there should not be sufficient money to the credit of such pension fund to pay all claims against it in full, claims on account of the death of members of such police force, fire department or band, if there be any such death, shall be first paid in full with as little delay as possible, after which an equal percentage shall be

paid upon all other claims to the full extent of the funds on hand until such funds be replenished so as to pay them in full."

Act 220, L. 1917, stood as the law without any change until 1923 when, by Act 99, L. 1923, changes which do not affect this case in any manner were made in the "third" and "fourth" subdivisions of section 3. In 1927 the legislature, by Act 249, made an important amendment to the pension law by adding a new paragraph to what originally was subdivision "2" (quoted above) of section 2, Act 220, L. 1917, which subdivision had then become subdivision "2" of section 2162, ch. 130, R. L. 1925. The original subdivision "2" was re-enacted and a new paragraph was added, reading as follows: "Such payments to the Pension Fund shall continue so long as they shall be necessary to pay all pensions to persons on the pension rolls of the fund as of December 31, 1927, and all pensions which may become payable to or on account of all policemen, firemen and bandsmen who are in service on December 31, 1927. All such pensioners and policemen, firemen and bandsmen shall be entitled to benefits at the full rates, and to this end the Treasurer shall add to the amount equivalent to one (1) per centum of the General Fund such additional amounts as shall be required to pay the pensions as soon as the pension roll shall exceed such fund, so that the pensions will not be reduced as otherwise provided in Section 2165 of this chapter."

The legislature of 1929 by Act 9, L. 1929, made another important amendment to the pension law by rewriting the third and fourth subdivisions of section 2163, R. L. 1925 (formerly third and fourth subsections of section 3, Act 220, L. 1917), so as to enlarge, in subdivision "Third," the monthly pension to widows to $50, instead of $25, and $7.50 to each child under sixteen, instead of $5 per month. And in subdivision "Fourth," enlarged the pensions author-

ized to other classes of dependents to a maximum of $50 a month, instead of $35 as formerly.

To remove any doubt as to the intention of the legisla- ture respecting the meaning and application of Act 9, which was an amending Act only as to rate of pay, the legislature of 1931, by Act 144, L. 1931, attempted to make clear its intention to treat all like classes uniformly, whether they were on the pension rolls at the time the in- crease was made, or came on later. Act 144 rewrote and re-enacted an effective clause to Act 9 of March 28, 1929, making it specifically apply "to those now entitled to re- ceive and receiving pensions." This was not a strictly scientific method for curing what the legislature of 1931 very clearly believed to be an oversight of the legislature of 1929 in failing to fully and clearly express its intention that the increases would go to pensioners then on the rolls as well as to those who should qualify and come in later, but, in our opinion, particularly after reviewing the evi- dence put in the trial, there is no room to doubt that the legislature of 1931 intended Act 144 to be a complete cure, so as to give to all who were on the pension rolls on the date of the enactment of Act 9, the benefits of the increases prescribed by Act 9, from and after the date of its enact- ment.

The complaint of the petitioner is that the board of trustees of the Maui pension fund neglected and failed to enlarge her pension to $50 a month when Act 9 became law in 1929, and continued in such neglect and failure after Act 144, L. 1931, became effective and definitely declined and refused to pay her demand for arrears when made to it by her on August 23, 1935.

The respondents' return to the alternative writ is not shown in the record, but they argue in their briefs that mandamus does not lie, because the board of trustees is vested with discretionary power to reduce pensions; that

they so acted and that no abuse of discretion has been shown; that the pension paid petitioner from April 29, 1929, to June 30, 1933, was within the reasonable discretion of the trustees and was received and accepted by her without other demands, and constitutes a full and complete settlement; that Act 144, L. 1931, approved April 25, 1931, was not retroactive in requiring or authorizing increased pension payments for the period between April 29, 1929, and April 25, 1931; and that the board of trustees now has no funds with which to make up back payments accrued between any part of the time from 1929 to 1933, even if its discretion should prompt a desire to do so.

One of the principal offices of mandamus is to remedy official inaction. It was not shown in the trial in the lower court that the board of trustees had ever taken or attempted any action to reduce the pension provided by law for the petitioner. So far as the evidence indicates, it was simply inactive and continued to pay the $25 a month awarded her in 1921, until June 30, 1933, in apparent disregard of the laws enacted in the meantime in her favor and that of her children.

The board of trustees is vested with no discretionary power to reduce the pension of a dependent widow, or children under sixteen. It is given many discretionary powers under the statutes, but this is not one of them. The law is plain, mandatory and imperative that it shall pay $50 to a widow and $7.50 a month to each child and compliance with this direction of the statute is purely ministerial, notwithstanding it has many other discretionary powers. (*Roberts* v. *United States,* 176 U. S. 221, 230.)

It was not necessary for the petitioner to make demands from time to time, nor at any time, in order to preserve her rights which the law had given. The refusal of her demand in 1935 gave her the right to proceed by mandamus. Where the law imposes a public duty, it supplies the de-

mand in case of an omission to perform such duty, and in this case made a continuing demand for the petitioner. (*State* v. *Stuckey,* 78 Mo. App. 533; *Smith* v. *Lawrence,* 49 N. W. [S. D.] 7; *Lyman* v. *Martin,* 2 Utah 136.)

In the trial in the lower court the petitioner put in evidence the reports of the senate and house committees of the 1931 legislature dealing with the bill which became Act 144 of that session. This evidence was introduced apparently upon the assumption that there was an ambiguity in the Act, as to whether it cured Act 9 from the date of its passage, so as to bestow its benefits on pensioners from that time, or whether it bestowed these benefits only from the date of passage of Act 144. The report of the senate committee makes the matter sufficiently clear, in these words: "Under this act [referring to Act 9] widows of members of the police force, fire department and band whose husbands had lost their lives in the performance of duty had their pensions raised from $25.00 to $50.00 and children of such deceased members from $5.00 to $7.50. Under a ruling by the City and County Attorney of Honolulu these raises apply only to such widows or children who are receiving benefits from the act since its passage, while the intent of the Legislature of 1929 was that it should apply to all beneficiaries, including those who were receiving such funds prior to the passage of the Act. This Bill [meaning the bill which became Act 144] is to clarify and entitle all widows and children of deceased members of the police force, fire department and band to be on the same basis, whether death of the members was prior or subsequent to the 1929 Session of the Legislature." Senate Journal 1931, pp. 1004-1005.

No question was raised as to the right and power of the legislature of 1931 to direct that an increase should be paid dating from 1929, and it is sufficiently clear that Act 144 intended this should be done.

It may be said that it is fully recognized that the rule is well established that statutes generally, and particularly an ambiguous statute, will be construed as prospective in meaning, intent and operation and not retroactive, unless the contrary clearly appears or is necessarily implied, but, where a remedial statute is clearly intended to cure a defect in an earlier statute so as to make it operative in the bestowal of accruing benefits to persons from the date of the earlier statute, and is without ambiguity in its meaning and intent in that respect, the legislative intent as to retroaction must be given effect, for the spirit or reason of the law is the life of the law.

Remedial legislation should be given liberal application, and it is generally recognized that whatever is within the spirit of the statute is within the statute, even though it is not within the letter thereof, while that which is within the letter, although not within the spirit, is not within the statute. (*In re Di Torio,* 8 F. [2d] 279, 280; *Ozawa* v. *United States,* 260 U. S. 178, 194.)

"One of the most effectual ways of discovering the true meaning of the law, when its expressions are dubious, is by considering the reason and spirit of it, or the cause which induced the legislature to enact it." R. L. 1935, § 13. This sound statutory rule has stood in Hawaii for seventy-eight years.

The respondents argue that they have no funds available to meet payment of a judgment for past accrued pensions, and that a want of funds in the hands of a public officer is a complete answer to an alternative writ of mandamus. The correct rule is that a public body will not be required to do an act when it is impossible through a want of funds and inability to raise them. No impossibility is shown here, nor even a want of funds. The record shows that demand was made in August, 1935, and that the alternative writ was issued upon the petition on December 17,

1935. Respondents put in evidence in the trial on February 11, 1936, as an exhibit, a statement by the auditor of the county of Maui showing that the Maui pension fund had in hand on December 31, 1935, the sum of $3285.47 in cash and bond investments. Besides, under the law, there could be no excuse for a lack of funds without showing that the general fund of the county was entirely exhausted, for section 7904, R. L. 1935, which has been the law since Act 249 was passed in 1927, makes it mandatory for the treasurer of the county, who is a member of the board of trustees of the pension fund, to add to the pension fund such additional amount from time to time as may be necessary to pay all pensioners at full rates.

We hold the opinion that whatever discretionary power rested in the board of trustees to construe Act 9, L. 1929, as not intended to enlarge pensions that had been awarded prior to that enactment, was fully disposed of by the enactment of Act 144, L. 1931, and in our opinion the judgment should not be disturbed; accordingly it is affirmed.

*F. E. Thompson* for petitioner.

*E. R. Bevins,* County Attorney of Maui, and *Wendell F. Crockett,* Deputy County Attorney of Maui, for respondents.