CULLEN, J.
The main objection urged by the appellant against the irregularity of the election in question is that it was conducted in accordance with the provisions of section 9 of the general act for the incorporation of villages (chapter 291, Laws 1870) and nowise in conformity with the requirements of the election law of 1892; that is to say there were no official ballots provided for the election, and the ballots voted at the election were not blanket ballots, but separate ballots in favor of or against the proposed incorporation; also there were no voting booths, guard rails, or similar arrangements or appliances. The validity of -this objection depends on the question whether the election law of 1892, as amended in 1895 (Laws 1895, c. 810), is applicable to elections to determine the question of an incorporation of a proposed village. The statute of 1870 directs, in *806 express terms, how such an election shall be held, and the style of ballots to be voted thereat. The statute, in these respects, has not been, in direct terms, either repealed or modified. If not in', force, it must be because the election law of 1892 covers the same¡ subject-matter, and operates as an implied repeal of these provi-j sions of the village law. The first reform ballot law was that of 1890. After the enactment of that statue an election was held to pass upon the proposed incorporation of the village of Harrisville. The election was held and the voting had in the old way. On1 appeal it was held that the ballot law of 1890 did not apply to such elections and that the election was valid. Village of Harrisville v. Lawrence, 66 Hun, 302; 49 St. Rep. 288. It is entirely clear that that decision was correct. The statute of 1890 was repealed in 1892, the election law substituted' for it, but I find nothing in the latter statute to show that it was intended to include, elections of this character. Sections 2-4 of the statute would' seem to confine its scope and application to general elections andj special elections to fill vacancies in office. There has not been] pointed out to me, nor can I find any express provision in it, that; it shall be of general application to all elections. The direction as' to official ballots and the form of such ballots is plainly not gen-, eral. Section 80 prescribes when official ballots shall be provided: . " j
“Official ballots shall be provided at public expense at eachj polling place for every general election at which public officers, are to be elected directly by the people, except an election of school district officers or’ school officers of a city or village at which no other public officer is to be elected.” í
Hence, if there were no public officer to be elected by the people at an election, no official ballots are prescribed, and there is no requirement that the ballots voted should be of any particular character, for section 89 only applies where official ballots should have been furnished, and yet have not been furnished. It will be seen by the limitations and provisions of section 80 that the whole of article 4 of the election law is limited to elections at which public officers are to be elected. The serious question in this case arises from the amendment of section 83, made by chapter 810, Laws 1895. As amended, it directs that, whenever a constitual amend-1 ment or other proposition or question is to be submitted to the! vote of the electors of the state or of any. district thereof, a sepa- j rate ballot shall be provided by the same officers who are charged! by law with the duty of providing the official ballots for candidates for public office. . Such ballots shall comply with the re-; quirements of the official ballot for candidates for public office, in! so far as such requirements are applicable thereto. It may be conceded that the language of this section in its present form is! broad enough to include the election here in dispute, but this concession is not conclusive upon the question presented. The intention of the legislature must be determined from a consideration of the two statutes taken in their entireties. It is to be premised that repeals by implication are not favored. “A statute may sometimes he regarded as being repealed by reason of its inconsist *807 eney with a subsequent statute and by implication; but repeals by-implication are not favored in the law, and it is only in cases where the repugnancy is manifest, and the two statutes cannot be reconciled or stand .together, that the rule can be applied.” Mark v State, 97 N. Y. 572. See People v. New York Catholic Protectory, 101 N. Y. 195. The provisions of the several election .laws enacted during the last six years for the furnishing of ballots •at public expense were not dictated solely by a purpose of insuring the secrecy of the vote. This could largely, if not wholly, be .accomplished by other provisions of the election law. These provisions proceeded mainly from an intention to prevent the assessment of candidates for public office, political organizations,' for large sums, under the guise of necessary or proper election expenses, and the expenditure by candidates of large party contributions. In this the spirit of the election law is the exact reverse -of the village act. By the latter act, the persons interested in the promotion of the incorporation of the village are compelled to defray all the expenses attendant the proposed incorporation. The promoters must have the survey map and description made and the census taken; they must post and advertise the requisite notices, and provide the place for holding the election. I find no provision for reimbursing the promotors, even when the village is incorporated. It seems the plain intent of the statute that the whole expense of the proceedings to incorporate a village should 'be borne by those interested in affecting the corporation. It would be extremely difficult to apply to such proceedings the machínéry of a statute framed on lines directly the reverse. If the latter statute applies, the expense of the election would fall upon the whole town, probably in all cases, but at least when the ■incorporation failed; yet the election, as in this instance, might only affect a portion of the town. The village act also provides a perfect system of its own for reviewing the election held under its provisions. There is another consideration not without weight. The evils which the various ballot and election acts have been framed to prevent have related to party politics, and the election ■of candidates for office, and those evils have existed but to a ■slight extent, if at all, in elections to determine other public questions. No amendment made by the act of 1895, other than that •of section 83, has any effect on the question before us. Section ■'80 still remains unaltered, prescribing that official ballots shall be furnished at public expense for elections at which.public officers are to be elected. Section 83 may well be limited to the same -class of elections. For these reasons I think the provisions of the act of 1870 are still in force, and that the election was properly •conducted.
_ The order appealed from should be affirmed, with $10 costs and •disbursements. '"
All concur.