THE STATE ex inf. JESSE W. BARRETT, Attorney General, v. ROBERT IMHOFF et al.

In Banc, February 9, 1922.

1. **JURISDICTION: Quo Warranto: Ousting Township Officers.** The Supreme Court has jurisdiction of an original action by *quo warranto* to oust township officers based on the alleged invalidity of the proceedings resulting in the adoption of township organization, on the theory that, while the persons sought to be ousted are not State officers, "the title to an office under the State" is involved. Especially should the Supreme Court rule that it has jurisdiction where the Attorney-General has deemed the question to be determined of sufficient public importance to justify him in instituting the action solely in his official capacity.

2. **QUO WARRANTO: Direct Attack on Corporate Existence.** An action of *quo warranto* brought to oust township officers on the alleged ground that the order of the county court submitting the question of township organization to the voters was insufficient and invalid, is in fact a proceeding to determine the legality of the creation by the county court of the township as a corporate body, and being instituted by the Attorney-General *ex officio* is a direct attack upon the legal existence of the corporation.

3. **TOWNSHIP ORGANIZATION: Order of County Court: Sufficient Petition.** The order of the county court reciting that "the petition for township organization is examined and found to contain over one hundred names of voters" of the county is not invalid, but is sufficient. The order is not defective because it states that the petition was "found to contain over one hundred names of voters" instead of stating it was signed by more than one hundred legal voters.

4. **————: ————: ————: Exact Language of Statute.** Although a county court is one of inferior jurisdiction, and all jurisdictional facts necessary to authorize action must appear in the face of its

record before it can acquire jurisdiction of the subject-matter in a given case, it is not required that its order employ the exact language of the statute granting the power, but the order is sufficient if words of such definitive meaning are used as to convey the information that the court was acting within the purview of its powers.

5. ——: ——: **Jurisdiction.** Jurisdiction of the subject-matter of the submission to the voters of a county of a proposition to adopt township organization is expressly vested in the county court by statute (Sec. 13165, R. S. 1919), and an order submitting the proposition is simply the exercise of that jurisdiction.

6. ——: ——: **Petition: Words Equivalent to Signed.** A recital in the order of a county court that "the petition for township organization examined and the same found to contain over one hundred names of the voters" of the county, is the same as saying it was signed by over one hundred voters, for otherwise it would not be a petition, since a petition is a formal application in writing made by the signers thereof to a court requesting judicial action concerning some matter therein set forth.

7. ——: ——: ——: **Voter.** A voter is one who has the qualifications entitling him to vote, and a voter is therefore a legal voter; and an order of the county court reciting that a petition for township organization is "found to contain over one hundred names of the voters" of the county in effect recites that the petition was signed by over one hundred legal voters of the county.

8. ——: **Proposition Placed on General Ballot: Statutory Exception.** The placing of the proposition for the adoption of township organization at the bottom of the tickets containing the names of candidates for office, instead of on the constitutional ballot, did not invalidate the election. The placing of the proposition on the ballot "for state and county officers" was in compliance with Section 13165, relating to the particular subject of township organization, and Section 4944, subsequently enacted and requiring "every other proposition to be submitted on the constitutional ballot," contained no words declaratory of a legislative purpose to repeal all former acts prescribing the manner in which propositions other than constitutional amendments are to be submitted to the voters, and Section 13165 must therefore be considered an exception to the general provisions of Section 4944.

9. ——: ——: **Statutory Construction: General Subject: Exception.** Where two valid statutes are in conflict, and one of them has application to a particular subject, and the other is general in its terms and if standing alone would include the matter of the other, the special act must be construed as excepted out of

State ex inf. Barrett v. Imhoff.

the provisions of the general act, and hence not affected by the latter.

10. ———: Constitutional Ballot Act: Invalid Title. The Act of 1919 "relating to constitutional amendments" and now Section 4944, Revised Statutes 1919, contained no words in its title indicating that in its body it would require "every other proposition to be submitted on the constitutional ballot," and therefore those words hidden away in the body of the act are invalid, and did not affect other statutes declaring in what manner propositions other than constitutional amendments should be submitted.

11. ———: Ballots: To Contain Only Names of Candidates. Section 4859, Revised Statutes 1919, providing that ballots shall contain only the names of candidates nominated by the party which the ticket represents, will not render invalid the printing thereon of a proposition to adopt township organization, since the statute does not declare that such irregular course will render invalid the result of the vote on such other proposition.

12. ———: ———: ———: Mistake of Officials: Disfranchisement of Voters. The placing on the ballots of a proposition which the county court is authorized to submit to the legal voters, but which another statute says shall not appear on the ballots, but does not declare that its appearance thereon shall be fatal, will not be permitted to render invalid the result of the vote on the proposition, for voters are not to be disfranchised because of errors of officials, or because of irregularity in printing the ballots, whether by design or inadvertence, unless the law expressly says that such error or irregularity shall be fatal.

13. ———: ———: ———: Directory or Mandatory. Where it appears that no substantial right depends upon a compliance with the statutory requirement that only the names of candidates nominated by parties shall appear on the ballots, and that no injury can result from ignoring that requirement, and another legislative purpose, such as the submission to the voters of a proposition for township organization, may be accomplished by printing the proposition on the ballots, and substantially the same result obtained, the statutory requirement will be regarded as directory; but otherwise, it will be construed as mandatory. [Distinguishing West v. Ross, 53 Mo. l. c. 354.]

## Quo Warranto.

WRIT DENIED.

*Jesse W. Barrett* for informant; *A. M. Curtis* and *Robert Lamar* of counsel.

(1) The order of the county court is wholly insufficient and does not find that the petition referred to therein was signed by any person, but simply states that it was found "to contain over one hundred names of voters of Wright County." Nor does it find that they were legal voters. (2) The county court is a court of statutory creation, of inferior jurisdiction, not proceeding according to the course of the common law, and all of the jurisdictional facts must appear on the face of the record, and in this matter it was acting under special statutory directions, which must be strictly observed before it could acquire jurisdiction of the subject-matter. (3) To the county court, and the county court alone, is given the power to say whether or not one hundred legal voters of the county have signed the petition asking to have submitted to the voters the question of township organization, and a judicial examination and determination by that body, and that body alone, entered of record (because a court can only speak by its record), is a jurisdictional prerequisite to a valid election on said question. State v. Metzger, 26 Mo. 65; In re Bledsoe Hill, 200 Mo. 644; Masey v. Carter, 76 Mo. App. 490; Chicago Ry. Co. v. Young, 96 Mo. 39; Bennett v. Hall, 184 Mo. 416; State ex rel. Bell v. Bird, 108 Mo. App. 163; Fisher v. Davis, 27 Mo. App. 321; State ex inf. v. Colbert, 273 Mo. 208; State ex rel. v. Page, 107 Mo. App. 213; Ruckert v. Ritcher, 127 Mo. App. 664; Backenstoe v. Wabash Railroad, 86 Mo. 429; State ex rel. Jones v. County Court, 66 Mo. App. 96; State ex rel. v. Wilson, 99 Mo. 675. The recitals at the top of the petition filed cannot supply the finding of the court. In matters of this nature, where a direct attack is made on the result, an order failing to show jurisdictional facts cannot be aided by recitals of the petition or some paper in the case. 23 Cyc. p. 848, par. 3; In re Bledsoe Hill, 200 Mo. 644; Town of Somo-

nauk v. People, 53 N. E. (Ill.) 316; McKinney v. Commrs., 52 So. 756. (4) Sec. 4944, R. S. 1909, provides that "every other proposition to be submitted at the general election shall be proposed and submitted on the 'constitutional ballot' as herein provided, if any proposed constitutional amendments are submitted at such election or not." The same section also provides: "Ballots not printed or prepared as herein required shall not be counted on the proposition thereby submitted." The same section also provides for a separate ballot box for the deposit and reception of the constitutional ballots. The provisions of this section are mandatory, and regardless of whether fraud is shown or not, a ballot submitting township organization on the regular ticket containing the names of the candidates is absolutely illegal and void. (5) Attention is also called to Sec. 4859, R. S. 1919, which provides, among other things, that the official ballot furnished the voters for their use in voting for the candidates for office "shall contain only the names of the candidates nominated by said party." Also to Section 4860, which provides that in voting on a proposition or question that the words "Yes" and "No" shall be printed opposite thereto in bold legible type, with the words "scratch one of the above" printed in smaller type immediately below the words "Yes" and "No," and any such proposition or question shall not be printed in any other form, and the attention of the court is called to the ballot in this case, which did not contain the direction "scratch one of the above," but only the words "For Township Organization" and "Against Township Organization" at the bottom of the list of candidates on each of the tickets. The general rule is well settled that where the statute provides, as it does in this case, that votes shall not be counted unless complying with certain provisions, such provisions are mandatory and the courts have no power to override the expressed will of the people by legislative enactment, and that the election is absolutely void. 20 C. J. pp. 140, 141, sec. 161, 163; 10 Am. & Eng. Ency. Law (2 Ed.), p. 726f; Gomey v. Timon, 128 S. W. 657;

Harvey v. Cook County, 221 Ill. 76; Hart v. Picon, 86 So. 481; West v. Ross, 53 Mo. 354; Ledbetter v. Hall, 62 Mo. 422; Langford v. Gebhardt, 130 Mo. 640; McKays v. Minor, 154 Mo. 612; Horsefall v. School District, 143 Mo. App. 541; Straughan v. Meyers, 268 Mo. 580; Cross v. Keathley, 105 S. W. 854; Catlett v. Knoxville, 112 S. W. (Tenn.) 559; People ex rel. v. Olon, 187 N. Y. Supp. 298.

*John T. Sturgis* for respondents.

(1)   The order of the county court submitting the question of township organization to the voters of Wright County, when read in connection with the petition of voters asking such question to be submitted, is not so defective as to render the election void and defeat the expressed will of the people. Section 13164 gives the voters of any county the right to vote on this question at any general election. Section 13165 makes it mandatory on the county court to submit this question on petition of one hundred legal voters of the county. It is conceded that a petition so signed was presented and the county court undertook to perform its mandatory duty. The whole record must be read together and, when it appears from the whole record that the petition was signed by one hundred legal voters, that confers jurisdiction and is sufficient. Here the petition says that the signers are legal voters of Wright County. The order finds that such petition contained over one hundred names of voters of Wright County. This is sufficient. State v. McCord, 207 Mo. 525; State ex rel. Morrison v. Sims, 201 S. W. 910; State v. Schneider, 47 Mo. App. 669; State ex rel. Harrah v. Cauthorn, 40 Mo. App. 94; State ex rel. Reider v. Moniteau Co. Court, 45 Mo. App. 387; State ex rel. v. Staten, 268 Mo. 299; State ex rel. v. Duncan, 150 Mo. App. 410; State ex rel. v. Mayor of Neosho, 57 Mo. App. 198; Burkharth v. Stevens, 117 Mo. App. 425; State ex rel. v. Forest, 117 Mo. App. 252; State ex rel. v. Ross, 177 Mo. 230; State ex rel. v. Packett, 136 Mo. App. 704;

State ex rel. v. Fort, 107 Mo. 334. (2) County courts are composed of plain honest men not learned in the law, and their records cannot be expected to show a strict and technical compliance with statutes. Such proceedings are to be liberally construed to uphold their validity. That the language used lacks the precision used by skilled attorneys should not be given much weight. State ex rel. v. Job, 205 Mo. 34; State ex rel. v. Jones, 266 Mo. 201; State ex inf. v. Clardy, 267 Mo. 384; State ex rel. v. Morrison, 201 S. W. 910. (3) The chief complaint seems to be that the order of the county court does not find that the petition for township organization was signed by more than one hundred legal voters of the county, but only that it was so signed by one hundred voters of such county. The statute uses the term legal voters, but there is no difference between a voter and a legal voter. A voter is one possessing the qualifications and having the right to vote, and that means a legal voter. So that the finding that the petition was signed by one hundred voters is equivalent to a finding that it was signed by one hundred legal voters. Rousey v. Wood, 63 Mo. App. 460; 20 Cyc. 59; Beardstown v. Virginia, 76 Ill. 42; State v. Blaisdell, 119 N. W. (N. D.) 360; Cusick's Appeal, 10 L. R. A. 231. The terms voters and electors mean the same thing and are used interchangeably in our statutes. Sections 4748, 4751, 4752, 4794, 4797, 4739, R. S. 1919. (4) The rule is that, unless the law expressly or by necessary implication says that a ballot shall not be counted unless a certain condition is complied with, then such requirement will be held directory only, and the expressed will of the voter will not be defeated by holding the ballot void. This is especially true where the ballots are prepared and furnished to the voters by public officials. 14 Cyc. 345; 10 Ency. Law (2 Ed.), 722; 20 C. J. 149; 9 R. C. L. 1061, sec. 77; Bowers v. Smith, 111 Mo. 86; Nance v. Kearby, 251 Mo. 374; Horsefall v. School Dist., 143 Mo. App. 541; State ex inf. v. Russell, 197 Mo. 646; State ex rel. v. Hackman, 273 Mo. 699; Sanders v. Lacks, 142 Mo. 263. No voter can prepare or print his

own ballot, but must use that prepared and printed by the public officials, and cannot be defranchised for doing so. Bradley v. Cox, 271 Mo. 448; State ex inf. v. Roberts, 153 Mo. 125. (5) Sec. 4944, R. S. 1919, does not declare that a candidate ballot, on which a proposition, such as the adoption of township organization, is submitted, shall not be counted on that proposition or be otherwise void. This section deals with the constitutional ballot only and the preparation and printing of same, and declares that a constitutional ballot "not printed or prepared as herein required shall not be counted on the proposition thereby submitted." (6) The clause of Section 4944, declaring that "ballots not printed or prepared as herein required shall not be counted," etc., is confined in the matters preceding such clause, that is, to the preparation and printing of the ballots submitting the proposition (a) of calling a constitutional convention, (b) the adoption of a new constitution, and (c) the adoption of constitutional amendments. These matters are to be prepared by the Attorney-General, the form certified by the Secretary of State, and the county clerk is to print same as so certified. They are all to be voted on by "Yes" or "No." Not so with township organization. Sec. 13165, R. S. 1919. (7) The statute provides for publishing the official ballots, Sec. 4819, R. S. 1919, and the constitutional amendments, Secs. 4940 and 4941, and a method of correcting errors is given by Section 4865. Unless the method of correcting the ballots provided by that section is pursued, then it is too late to raise the objection after the election is held. Nance v. Kearby, 251 Mo. 387; Bowers v. Smith, 111 Mo. 60. (8) Where there is no fraud or deception and every voter is given an opportunity to express his free and untrammelled choice, ballots are not rejected and voters disfranchised for harmless errors as to ballots. Nance v. Kearby, 251 Mo. 383; Horsefall v. School Dist., 143 Mo. App. 541; Sanders v. Lacks, 142 Mo. 264.

WALKER, J.—This is an original action in the nature of an application for a writ of *quo warranto* brought in this court to oust from office certain township officers of Wright County. The alleged invalidity in the proceedings of the county court which resulted in the adoption by the people of township organization in said county, is the basis of the action. Two grounds of invalidity are alleged: One, that the order of the court submitting the question to the people is insufficient in failing to show that the court found that a petition signed by more than one hundred voters of Wright County had been filed, asking the court to submit the proposition to the people for their adoption or rejection. The order as entered is as follows:

"The petition for township organization examined, the same found to contain over one hundred names of voters of Wright County; therefore the court orders that the clerk of this court submit this to voters, by ballot. Vote to be submitted at the general election in November, 1920."

The specific defect complained of is that the order, instead of stating that the petition was signed by more than one hundred legal voters, states that "it was found to contain more than one hundred names of voters."

The second contention is that the question was not submitted on the constitutional ballot as provided by Section 4944, Revised Statutes 1919, but was printed at the bottom of the tickets containing the names of candidates for the various offices to be voted for at said election, in the words following:

"For township organization

"Against township organization."

I. Jurisdiction is entertained by this court under the authority of Section 12, Article VI, Constitution of Missouri, and our ruling in State ex rel. School District

v. Harter, 188 Mo. 516, cited with approval in State v.
Con. School District, 209 S. W. (Mo.) l. c.
99, upon the theory that "the title to an of-
fice under the State" is involved. This, although the
persons sought to be ousted are not State officers within
the meaning of the Constitution, and despite the fact
that a township is not a political subdivision of the State
so as to confer appellate jurisdiction upon this court in
a case where the township is a party. The rulings re-
ferred to were, it is true, in regard to the validity of the
organization of school districts. There does not seem to
be any convincing reason why the rule in regard to such
subdivisions, as indicated by the cases cited, is not equal-
ly applicable to the taking of jurisdiction by this court
of cases involving the validity of the creation of 'town-
ships; especially when, as in the cases in regard to school
districts, the Attorney-General, as the chief law officer
of the State, has deemed the question to be determined
of sufficient public importance to cause him to institute
the action in this court solely in his official capacity. As
persuasive of the propriety of our entertaining jurisdic-
tion here, we have in contested election cases involving
the titles of township officers and justices of the peace
exercised the right to determine same. [Macrae v. Coles,
183 S. W. (Mo.) 578; Ramsey v. Huck, 267 Mo. 333, 184
S. W. 966.]

*Jurisdiction.*

II.    To sustain the first contention, relator relies up-
on the rule that a county court, in a direct proceeding to
question the validity of its action, being of statutory cre-
ation and of inferior jurisdiction, does not proceed
according to the course of the common law, and
that all of the jurisdictional facts necessary to au-
thorize its action in a given case must appear in the face
of the record before the court can acquire jurisdiction
of the subject-matter. [State ex inf. Attorney-General
v. Woods, 233 Mo. l. c. 380; State ex rel. Am. Auto. Co.
v. Schramm, 196 S. W. (Mo.) l. c. 21.]

*Valid Order.*

That this is a correct statement of the law there can be no reasonable grounds of controversy. While the action is brought against the officers of a township, it is in fact a proceeding to determine the legality of the creation by the county court of the township as a body corporate or such a legal entity as is recognized by our law. Instituted by the Attorney-General by an information *ex officio,* it constitutes a direct attack and must be so considered. [State ex inf. Attorney-General v. Colbert, 273 Mo. l. c. 209, and cases; State ex inf. Attorney-General v. Woods, 233 Mo. 357.]

It is to the language of the order above set forth to which we will look, therefore, to determine whether it is sufficient to disclose the jurisdiction of the county court.

In the determination of this question it is not required that the exact language of the statute or grant of power be employed in the order; but it will be sufficient if words of such definitive meaning be used as to convey the information that the court was acting within the purview of its powers. The question is: Did the order contain every essential requirement of the statute? If so, it is sufficient. [Hadley v. Russell, 197 Mo. 633.] Any other conclusion would result in a "sticking in the bark," so to speak, or a literal reliance upon the letter rather than the evident purpose and meaning of the words employed. Especially should this well recognized rule of interpretation as to a resort to the context rather than the letter be made when, as here, jurisdiction of the subject-matter of the submission of the adoption of township organization is expressly vested in the county court. [Sec. 13165, R. S. 1919; Rousey v. Wood, 63 Mo. App. 460; Fanning v. Krapfe, 68 Iowa, 244; Adams v. Saratoga, 10 N. Y. 332; Ferguson v. Crawford, 70 N. Y. 253.]

As we understand relator's contention, jurisdiction of the subject-matter as conferred by law is not questioned, but the sufficiency of the order of the court in the exercise of that jurisdiction. Is it, therefore, by its terms sufficient?

If it be found that this requisite is present, then this contention must be ruled adversely to the relator.

The part of the order complained of reads as follows: "The petition for township organization examined and the same found to contain over one hundred names of the voters of Wright County" etc.

A petition in the most general acceptation of the word means a formal request, written or printed, and signed by one or many, to be submitted to a person in authority, or to an administrative, a judicial, or a legislative body for the bestowal of some benefit or privilege, the concession or restoration of a right, the redress of a grievance, the establishment of a status or the exercise of any power within the purview of the person or body to which it is submitted. In law its meaning is in nowise different in that it is a formal application in writing made by the signers thereto to a court requesting judicial action concerning some matters therein set forth. The use of the word petition, therefore, means such an application or request as is contemplated by these definitions, and it cannot under any reasonable interpretation be otherwise understood by anyone familiar with the use of ordinary English words. [State v. Tullock, 108 Mo. App. l. c. 34; Lawrey v. Sterling, 41 Ore. l. c. 525; 30 Cyc. p. 1534 and note 99.] Being a petition, it must likewise be understood that it was signed, and that it had been signed as required by the requisite number to entitle it to consideration is sufficiently declared to manifest the regularity of the court's action in the declaration therein that it was "found to contain the names of more than one hundred voters." In what possible manner, in view of the nature of the instrument submitted, could it be said or understood to contain these names except as signers thereto? Furthermore, the word "voters" rather than "legal voters" as used in the order cannot form the basis of serious controversy as to the failure of the record to show the court's jurisdiction. It is true the statute (Sec. 13165, R. S. 1919) predicates the right of the county court to submit the question of town-

*Petition.*

*Voters.*

State ex inf. Barrett v. Imhoff.

ship organization "on the petition of one hundred legal voters," but a voter must be a legal voter or he is not entitled to be so classified. A voter is one who has the qualifications entitling him to vote. [In re Denny, 156 Ind. 1. c. 108, 51 L. R. A. 722; Pace v. Raleigh, 140 N. C. 65; Mills v. Hallgren, 146 Iowa, 215; Greenough v. Tiverton, 30 R. I. 212, 136 Am. St. 953.] As we have stated what the rule means is that the court's orders or judgments must show a reasonable compliance with the grant of its power, its order, therefore, showing that the petition "was found to contain the names of over one hundred voters" leaves no room for any other conclusion than that they were legal voters, and that they signed the petition.

The import of the order is to be measured by the meaning of its words correctly used and interpreted as declaratory of the statute or grant of its power conferring the jurisdiction, and not to redundant words which may be incorrectly employed in such statute.

From whatever coign of vantage the order may be viewed it is not lacking in any of the essentials which go to sustain the validity of the court's action.

III.   The second contention is as to the manner of the submission of the question of the adoption or rejection of township organization to the voters of the county.

The statute enacted with special reference to this subject and which has been in force since its enactment in 1879 (Laws 1879, p. 218), provides, among other things, that "the county court, on petition of one hundred legal voters of said county, shall cause to be submitted to the voters of the county the question of township organization under this article, by the ballot, to be written or printed, 'for township organization,' or 'against township organization,' to be canvassed and returned in like manner as votes for state and county officers." [Sec. 13165, R. S. 1919.] It was under this statute that the question of township organization was submitted and that the officers sought to be ousted were elected.

It is not contended, however, that there was a failure to comply with this section, but that a compliance therewith was unauthorized in that the question should have been submitted under a provision of what is now Section 4944, Revised Statutes 1919, enacted in 1909 (Laws 1909, p. 492), subsequently amended, but not in regard to the provision here under consideration. This section is embodied in and, so far as all of its material features are concerned, constitutes the statute regulating the manner in which constitutional amendments or the adoption of a new constitution is required to be submitted. Inserted in this section, and upon which relator relies to sustain his contention, is the following provision: *"Every other proposition to be submitted at the general election shall be proposed and submitted on the 'constitutional ballot,' as herein provided, if any proposed constitutional amendments are submitted at such election or not."*

While not so expressly stated, the operative effect of this provision, according to relator's contention, must in its final analysis rest upon the rule of construction that Section 4944, having been enacted subsequently to Section 13165, repeals the latter and therefore constitutes the mode of procedure to be observed by county courts in the submission of township organization to the voters.

In the absence of any words in the enactment of Section 4944 declaratory of a legislative purpose to repeal all former acts prescribing the manner in which propositions other than constitutional amendments are to be submitted to the people, the effect, if any, of the adoption of said section upon Section 13165 must be by implication. It being necessary that there be present in the later act such declaratory words or some other equally cogent evidence of a purpose on the part of the Legislature to repeal the earlier section in the adoption of the later. Cases illustrative of the rule requiring such words or the presence of such an intention are found in the interpretation of acts prescribing a form of ballot in a particular case in an election for the organization of a village, the establishment of a high school district or

the issuance of bonds of a county; in each of which cases it was held that the acts especially applicable thereto were not repealed by subsequent general laws which prescribed a form of ballot other than that required by the particular statute. [People v. Marquiss, 192 Ill. 377; Rankin v. Cowden, 66 Ill. App. 137; Tinkel v. Griffin, 26 Mont. 426; Matter of Taylor, 3 App. Div. 244, 38 N. Y. S. 348; People v. Utah Comsrs., 7 Utah, 279.]

It may not be inappropriate in the removal of any other question as to the validity of Section 13165 to say that while the statute of which it is a part has reference only to the adoption of township organization, it is not obnoxious to the constitutional provision against special legislation in that it is general in its nature in having reference to the creation of township organizations as a class.

Aside from what has been said as to the absence of any declaratory words or other expressed purpose to repeal the particular statute of which Section 13165 is a part by the enactment of the provision in question incorporated in Section 4944, the matter still presenting itself for determination is as to which of these acts prescribes the course of procedure to be pursued by the county court.

That the two statutes are in conflict, it is evident. We have said, not once, but a number of times, that where there are two acts and the provisions of one have special application to a particular subject and the **Exception. Statutory** other is general in its terms and if standing alone would include the same matter and thus conflict with the special act, then the latter must be construed as excepted out of the provisions of the general act, and hence not affected by the enactment of the latter. This, of course, on the assumption that the general act is in other respects valid and would, but for the exception, suffice to prescribe thereafter the county court's course of procedure. [Hurlburt v. Bush, 284 Mo. 397; Stat ex rel. Jones v. Chariton Dr. Dist., 252 Mo. l. c.

353; State ex inf. Major v. Amick, 247 Mo. 1. c. 292.]

The manner, here attempted to be pursued, of amending statutes especially applicable to particular subjects, of which we have many in the body of our law, aside from the question of the validity of the one here under consideration, which we will discuss later, should not receive judicial sanction: first, because as we have shown it violates well recognized canons of construction; and, second, because it can only result in confusion or misunderstanding as to the application of the amendment until it has been judicially construed or supplemented by further legislation.

Omnibus Amendment

Aside, however, from the consideration of any other phase of this contention of the relator, the validity of the provision in question is of prime importance. This provision, as now found in Section 4944, Revised Statutes 1919, although appearing in the same section under different numerals in former revisions, is, so far as its validity is concerned, to be measured as found in the Laws of 1919, page 325, which act repealed what was then Section 5971, and reenacted the same in the identical language now found in Section 4944. The title to the Act of 1919 is as follows: "An Act to Repeal Sections 5970 and 5971 of Article 7 of Chapter 43, Revised Statutes 1909, relating to constitutional amendments, and to enact two new sections in lieu thereof to be numbered Sections 5970 and 5971 relating to constitutional amendments, providing for official ballot titles to all proposed constitutional amendments and the manner and form of printing same upon the official constitutional ballots."

Defective Title.

It is apparent from even a casual reading of this title that while it is sufficiently definite and comprehensive to indicate to the reader that its object and purpose relates to constitutional amendments, there is no implication, much less an expression, that it has reference to any other matters. However, we find, as we have said, hidden away in the body of this section the provision

under review and upon which the relator rests his contention.   To accentuate the sphinx-like silence of the title as to the presence of the provision therein, we reprint the provision with the sentences preceding and following it to demonstrate that although it may have been bidden by the Legislature, it is nevertheless under the Constitution and the rules of interpretation an unwelcome guest to the otherwise harmonious context of Section 5971, for example: ''The constitutional ballot shall not be less than four inches wide and ten inches long, of the same kind of paper, color and of equal size.  Every other proposition to be submitted at the general election shall be proposed and submitted on the 'constitutional ballot,' as herein provided, if any proposed constitutional amendments are submitted at such election or not. The clerk of the county court of each county shall provide for each district in his county, and the election commissioners for each election district in their city, a separate ballot box for the deposit and reception of the constitutional ballots.''

We have so frequently construed that portion of our Constitution (Sec. 28, Art. IV) which provides that no bill, except as therein provided, shall contain more than one subject, which shall be clearly expressed in its title, that in view of the inescapable conclusion flowing from the reading of the title and the provision of the act under review, a discussion of same would seem to be unnecessary.  It may, therefore, be sufficient to say that the purpose to be subserved by the Constitution in regard to the title of an act is that by its terms it must be such as to serve as a clear and comprehensive indicator of the purpose of the act.   While it may be so general as to omit matters germane to the principal features of the statute, if it sufficiently indicates the substantial purpose of the law, it will not be violative of the Constitution.  [State v. Sloan, 258 Mo. 305.]   While, therefore, the title in this case is sufficiently comprehensive to indicate that the act is in regard to the submission of constitutional amendments, there is an utter absence of any reference to the

submission of any other proposition such as is contemplated by the provision. So far, therefore, as this act attempts to regulate the submission of other propositions than constitutional amendments, it must be held to be invalid. We discussed this question, with the citation of apposite authorities in the case of State v. Sloan (supra) and in the later cases of State v. Crites, 277 Mo. 194, and Vice v. Kirksville, 280 Mo. 348, with a like conclusion to that reached in the present case. There is neither reason nor authority for departing therefrom.

IV. That portion of Section 4944, supra, which provides that "ballots not printed or prepared as herein required shall not be counted," in view of our ruling that elections for the submission of township or-

Application. ganization must be under the statute relating to that subject, has no application except as to ballots submitting constitutional amendments.

V. The provision in Section 4859, Revised Statutes 1919, that ballots shall contain only the names of the candidates nominated by the party which the ticket represents will not render invalid the printing of the proposition thereon of the submission of township or-

Irregular Ballots. ganization, if otherwise in conformity with the statutory requirements. Although the course pursued in the instant case was irregular, to render the same fatal the statute must so declare. As was said in Nance v. Kearbey, 251 Mo. 374, where an irregularity is not declared by statute to be fatal, the courts will be slow to so construe it as to disfranchise voters because of the errors of officials. As was further said in effect by LAMM, C. J., in that case, to permit a great mass of voters to be disfranchised because of an irregularity in the printing of the ballots, whether the result of design or inadvertence, would be to turn the law into an indefensible trap, and greatly multiply the powers of election officials to control the result of an election. It was further held in that case that a challenge of the tickets for

irregularity comes too late after the election in which there was no fraud of any sort; that a timely challenge is necessary to change the result of an honest count.

In the early case of Applegate v. Eagan, 74 Mo. 258, this court held that where ballots cast at a general election for state, county and township officers contained, in addition to the names of the candidates and the offices to be filled, a clause for and against township organization and a clause against restraining swine from running at large, with a caption to these clauses in the words "erase the clause you do not favor," did not invalidate the ballot either as to township organization or the restraining of swine or as to the candidates voted for. A like rule was announced as to clauses on ballots other than the names of the candidates in State ex rel. Broadhead v. Berg, 76 Mo. 136, and in Gumm v. Hubbard, 97 Mo. 318, in which it is held that where the order of the county court submitting a proposition to the voters is otherwise valid the submission of the same on the general ballot will not render it invalid.

If further reasoning be required to sustain the conclusion as to the directory nature of the inhibition concerning what shall appear on the ballot as prescribed in Section 4859, supra, the same may be determined by the following tests: If it appears that no substantial right depends upon a compliance with the statutory requirement and no injury can result from ignoring it, and the other purpose of the Legislature can be accomplished in a manner other than that prescribed and substantially the same result obtained, then the statute will be regarded as directory; but if not so, it will be mandatory. [State ex rel. Hamilton v. Railroad, 113 Mo. l. c. 308; City of St. Louis v. DeNoue, 44 Mo. l. c. 140; Bitumin. Pav. Co. v. McManus, 144 Mo. App. 593.] Subjected to this test, there seems to be no escape from the conclusion that the statute is directory, and if so, then the printing of the question of township organization on the ticket of the candidates for office will not be held to render the result of the election on the proposition submitted invalid.

*Directory Statute.*

West v. Ross, 53 Mo. l. c. 354, announces nothing contrary to the rule stated as to the classification of statutes. That case is to be clearly distinguished from the one at bar in that the statute there under consideration not only directed what was to be done, but declared the consequence that would follow its disobedience; this authorizes the classification of the statute as mandatory. In the instant case the statute nowhere declares what shall follow its violation. It is, as we have shown, therefore clearly directory. [Art. I, Chap. 121, R. S. 1919.]

Finding no substantial reason for the issuance of the writ of ouster prayed for herein, the same is denied. All concur; *James T. Blair, C. J.,* in paragraphs 1 and 2 and the result; *Woodson, J.,* absent.